# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANACONDA, INC., | ) |
| | ) |
| Plaintiff, | ) C.A. No. 24-925-MN |
| | ) |
| v. | ) **DEMAND FOR JURY TRIAL** |
| | ) |
| | ) **REDACTED** |
| INTEL CORPORATION, | ) **PUBLIC VERSION** |
| | ) |
| Defendant. | ) |
| | ) |

## PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO STAY

OF COUNSEL:

Maximilian A. Grant
Sarang V. Damle
Holly K. Victorson
Nicole E. Bruner
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200

Kelly E. Farnan (#4395)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com

*Attorneys for Plaintiff Anaconda, Inc.*

Dated: October 17, 2024

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................1

II. NATURE AND STAGE OF THE PROCEEDINGS ...........................................2

III. SUMMARY OF ARGUMENT ............................................................................2

IV. STATEMENT OF FACTS ...................................................................................3

V. LEGAL STANDARD ..........................................................................................6

VI. ARGUMENT .......................................................................................................6

    A. The ISA Does Not Apply to this Dispute ..................................................6

    B. Even if the ISA Applied to the Dispute, Intel Failed to Address The Factors Considered By This Court in Granting Stays, and All Factors Weigh Against A Stay ................................................................................8

        1. A Stay Will Not Simplify the Issues for Trial .................................9

        2. The Early Stage of this Case Does Not Merit a Stay ......................9

        3. A Stay Would Unduly Prejudice Anaconda .................................10

VII. CONCLUSION ..................................................................................................11

i

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Chervon (HK) Ltd. v. One World Tech., Inc.*,
    No. 19-1293, 2022 WL 14812531 (D. Del. Oct. 26, 2022) .......................................................... 8

*Costantino v. City of Atlantic City*,
    No. 13-6667, 2015 WL 668161 (D.N.J., Feb. 17, 2015) ............................................................ 10

*Inpria Corp. v. Lam Rsch. Corp.*,
    No. 22-1359, 2024 WL 2111989 (D. Del. May 3, 2024) ....................................................... 8, 10

*Miller v. Corr. Med. Sys., Inc.*,
    802 F. Supp. 1126 (D. Del. 1992) .............................................................................................. 8

*Morgan v. Quest Diagnostics Inc.*,
    No. 20-430, 2020 WL 7183503 (D.N.J. June 8, 2020) ............................................................... 6

*Personalized User Model, L.L.P. v. Google, Inc.*,
    No. 09-525, 2012 WL 5379106 (D. Del. Oct. 31, 2012) ......................................................... 6, 8

**RULES**

D. Del. L.R. 7.1.3 ............................................................................................................................ 8

## I. INTRODUCTION

Anaconda opposes Intel's Motion to Stay (the "Motion"). Before filing this suit, Anaconda repeatedly attempted to engage with Intel regarding Intel's need for a license for its ongoing use of Anaconda's copyrighted software. Intel was thoroughly informed and completely aware of Anaconda's position that the prior license agreements with Anaconda had expired, and that those prior agreements did not extend to Intel's ongoing use. Instead of substantively engaging with Anaconda's repeated attempts to discuss a commercial solution, Intel stonewalled, forcing Anaconda to sue to protect its rights. Even post-suit, however, Anaconda made plain to Intel that its priority was to reach a commercial resolution. For example, Anaconda offered to delay service of the Complaint provided Intel would engage in substantive talks, but Intel refused, stating instead its intention to "spin-up [its] litigation team." Apparently revisiting that decision, Intel later asked Anaconda to consent to a 120-day stay. Anaconda offered a shorter stay, provided Intel came forward with a good faith proposal for commercial resolution. Intel refused.

On that background, Intel's professed desire to mediate is hard to credit. Regardless, Intel's legal arguments for a stay are meritless, both because the contractual dispute resolution provision it relies on does not apply to the actions challenged here, and because Intel has utterly failed to address the applicable legal standard. Given Intel's studied refusal to substantively respond to Anaconda's attempts to resolve this dispute, proceeding with this litigation in the ordinary course is the only option that will avoid prejudice to Anaconda and (may) incentivize Intel to take its violation of Anaconda's IP rights seriously. Nothing prevents Intel from making a reasonable proposal, which would be its first, and which Anaconda would promptly consider. But that is no reason to delay this case. Intel's motion should be denied.

## II. NATURE AND STAGE OF THE PROCEEDINGS

On August 8, 2024, Anaconda sued Intel for copyright infringement because Intel was using Anaconda's technology to establish a market foothold in the AI industry while refusing to pay for its use. D.I. 1 ¶ 2. Anaconda asserted one copyrighted work, the "Anaconda Distribution and Associated Packages Release 2024.02-01" ("Anaconda Distribution"). *See id.* Ex. A. The Anaconda Distribution provides everything software developers need to start developing artificial intelligence, machine learning, and other data science projects as quickly and seamlessly as possible. *Id.* ¶ 26. Anaconda asserts that Intel directly infringes the Anaconda Distribution based on Intel's own internal use of the Anaconda Distribution and Intel's distribution of its "AI Kit," which Anaconda alleges includes copyrighted elements of the Anaconda Distribution, to Intel's customers. *Id.* ¶¶ 7–9. Anaconda further asserts that Intel is contributorily and vicariously liable for the infringing acts of Intel's customers using the AI Kit. *Id.* ¶¶ 38–47.

On October 3, Intel moved to stay, contending that the parties are contractually obligated to engage in a "mandatory dispute resolution process" under the provisions of a Service Agreement between Intel and Anaconda ("ISA"). D.I. 16 ("Mot.") at 1, 7. Intel is wrong on the facts and law.

## III. SUMMARY OF ARGUMENT

Intel seeks to stay this suit under its misguided belief (1) that the parties are obligated to engage in dispute resolution processes prior to litigation and (2) that its distribution of Anaconda packages[1] is covered by a prior—now expired—agreement. Intel's request should be rejected for three reasons:

---

[1] "Packages are collections of software modules and functions that software developers can re-use to perform common tasks." D.I. 1 at ¶ 16.

*First*, no contract obligates the parties to engage in formal dispute resolution proceedings. Although the "Quote" relied upon by Intel references the ISA, the express language of the ISA required that any amendments to the ISA—which the Quote purports to be—had to be signed by both parties.  The Quote was unsigned by both parties, so the language in the Quote purporting to incorporate the ISA is ineffective.

*Second*, this dispute does not concern actions covered by the Quote.  The Quote permitted only limited ongoing use of Anaconda's software after its expiration, and Intel has exceeded the bounds of that limited use.  Indeed, the Complaint is premised on allegations that Intel used to have a license but continues to use Anaconda's copyrighted work despite the expiration of that license.  *See* D.I. 1 ¶¶ 2, 7–8, 30–31, 36.  This dispute is entirely about acts that fall outside any license.

*Third*, even assuming the dispute resolution provision of the ISA applies to the present dispute, Intel cannot demonstrate that a stay is warranted.  Notably, Intel's Motion ignores the applicable legal test for a stay.  Intel cannot satisfy the correct legal standard in any event.  Given the previous protracted negotiations between senior executives of both parties, a stay—particularly one lasting *four months*—would impose needless delay and expense, would not simplify issues for the Court, and would serve only to prejudice Anaconda.

## IV. STATEMENT OF FACTS

It is undisputed that there were two different aspects to the commercial relationship between the parties: (1) "development of software for Intel" and (2) "Intel's purchase of relevant licenses from Anaconda." Mot. at 1.  The software development work Anaconda performed for Intel was governed by an "Intel Services Agreement," or "ISA," signed on January 9, 2018. D.I. 17-1, Ex. A at 1.  In that agreement, Anaconda agreed to provide a specific set of services and

3

deliverables described in an "Addendum A" to the ISA. *Id.* ("Subject to the terms and conditions of this Agreement, Intel will purchase and [Anaconda] will provide the services described in Addendum A ('Services') and any goods or deliverables related to this Agreement ('Items') at the prices provided in Addendum A."). As signed on January 9, 2018, there was only one Addendum A: Addendum A-1, which referenced a specific and narrow set of development projects and software deliverables, *not* including the Anaconda Distribution that is the subject to this lawsuit. *Id.*, Ex. A at 8. The ISA provided for the possibility of further projects "under which [Anaconda] will provide Services and Items to Intel," but "the scope of each project" was required to be "documented in a separate statement of work ('SOW') in Addendum A and numbered consecutively, such as Addendum A-1, Addendum A-2, etc." *Id.*, Ex. A at 1.

> Importantly, the ISA further provided that:
>
> This Agreement ***contains the complete and exclusive agreement*** and understanding between the parties concerning the subject matter of this Agreement . . . . Each party acknowledges and agrees that in entering into this Agreement it has not relied on, and ***will not be entitled to rely on, any oral or written representations, warranties, conditions, understanding, or communications between the parties that are not expressly set forth in this Agreement***. . . . ***No modification or amendment to this Agreement will be effective unless in writing and signed by authorized representatives of each party***.

*Id.*, Ex. A at 5–6.[2] In short, because the Agreement as signed in January 2018 only contemplated the services and deliverables set forth in Addendum A-1, all additional work under the ISA had to be agreed to in a series of written, signed, and consecutively numbered "SOWs." *Id.*, Ex. A at 1, 5–6, 8.

Separately from Anaconda's software development work for Intel, Intel also licensed Anaconda's proprietary software through a series of licensing agreements. Under those

---

[2] All emphases added, and internal quotations and citations omitted, unless otherwise noted.

4

agreements, Intel used Anaconda's software in two ways: (1) Intel embedded and distributed its "AI Kit" with Anaconda's proprietary packages and (2) Intel employees used Anaconda's proprietary packages for internal purposes. *Id.*, Ex. D at 2. Licenses for both uses have expired. *Id.*

In its Motion, Intel points to a document labeled as a "Quote" (referred to by Intel as a "Subscription Order"), which ███████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████ *See* Mot. at 2–3; D.I. 17-1, Ex. B. That Quote included the following reference to the ISA: "This Order Form is subject to the Intel Services Agreement between the parties dated January 8, 2018." D.I. 17-1, Ex. B at 2. The Quote is unsigned by both parties, and was not a consecutively numbered "SOW." *See generally id.*, Ex. B. The Quote also provided that:



*Id.*, Ex. B at 2. The "Subscription Term" of the Quote ended on June 6, 2023, and Intel's ongoing rights to Anaconda software were limited in the manner above. *Id.*, Ex. B at 1.

But Intel's actual use of Anaconda's software was not so limited. Intel continued to (1) distribute Intel Software published *after June 2023* incorporating Anaconda packages and (2) instruct end users to download updated Anaconda packages from Anaconda's Repository. *Id.*, Ex. D at 2. After the expiration of that "Subscription Term," Anaconda repeatedly sought to engage Intel in commercial negotiations for a renewed license. Declaration of Jessica Reeves in Support of Plaintiff's Answering Brief in Opposition to Defendant's Motion to Stay ("Reeves Decl.") ¶ 3, Ex. 1 (communications dated July 26–August 8, 2024), Ex. 2 (communications dated

5

May 6–10, 2024), Ex. 3 (communications dated April 19–May 2, 2024). And after filing suit, Anaconda (1) offered to delay service of the Complaint if Intel engaged in good faith negotiations—Intel refused; and (2) offered a reasonable stay of litigation if Intel agreed to provide a "good faith enterprise license proposal"—Intel refused. Reeves Decl. Ex. 1; Declaration of Holly Victorson in Support of Plaintiff's Answering Brief in Opposition to Defendant's Motion to Stay ("Victorson Decl.") Ex. 1.

## V. LEGAL STANDARD

"Courts typically consider three factors in determining whether a stay is appropriate: (1) whether a stay will simplify the issues for trial, (2) whether discovery is complete and a trial date has been set, and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." *Personalized User Model, L.L.P. v. Google, Inc.*, No. 09-525, 2012 WL 5379106, at *1 (D. Del. Oct. 31, 2012). "Courts may also consider whether the moving party would face undue hardship or inequity in the absence of a stay." *Id.* In deciding a stay, "courts must weigh competing interests and strive to maintain an even balance, mindful that the stay of a civil proceeding constitutes an extraordinary remedy." *Morgan v. Quest Diagnostics Inc.*, No. 20-430, 2020 WL 7183503, at *1 (D.N.J. June 8, 2020).

## VI. ARGUMENT

### A. The ISA Does Not Apply to this Dispute

Intel contends that the Quote is subject to the ISA's provision for dispute resolution. Mot. at 6. Intel is wrong. Based on the express terms of the ISA, the parties never incorporated the ISA's dispute resolution procedure into the Quote. This is so for two reasons.

*First*, ISA's terms do not apply to the Quote because the Quote's execution did not comply with the requirements of the ISA. The ISA as originally signed was limited to a particular set of services and deliverables set forth in "Addendum A-1." D.I. 17-1, Ex. A at 8. The ISA set forth

6

specific requirements for additional services or deliverables that would be subject to the ISA. Any "further projects" not originally set forth with the ISA were to be "documented in a separate statement of work ('SOW')" and "numbered consecutively, such as Addendum A-1, Addendum A-2, etc." *Id.*, Ex. A at 1. Separately, because any agreement to perform additional services or supply additional software deliverables necessarily would be a "modification or amendment" of the ISA, such a SOW had to be signed by authorized representatives of both parties. *Id.*, Ex. A at 5–6.

The Quote meets neither requirement. The Quote exhibits no addendum notations nor any indication that it should be treated as a "SOW" under the ISA. *See generally id.*, Ex. B. And the Quote lacks any signature, much less signatures by authorized representatives of both parties. Accordingly, to the extent that the Quote reflects any contract at all between the parties, the ISA's terms—including the dispute resolution term—were not incorporated into the Quote.

*Second*, even if the Quote is governed by the ISA, the allegations in this case are unrelated to the Quote. The provision of the Quote relied on by Intel ███████████████████████████ ███████████████████████████████████████████████████████████████████████████ ████████████████████████████ *Id.*, Ex. B at 2; Mot. at 3, 6. But the allegations in this case relate to actions taken by Intel well outside the limited scope of that permitted ongoing use. Indeed, Intel has released no less than *three* versions of the AI Kit since June 2023—at least two of which directly incorporate packages from Anaconda. Victorson Decl. Exs. 2–3 (including packages "available through Anaconda only"). Moreover, Anaconda alleges that Intel is inducing its customers to infringe Anaconda's copyrights—and, indeed, Intel's own documents show Intel instructing its users to download new and updated packages from Anaconda's Repository. D.I. 1

7

¶ 34; Victorson Decl. Exs. 4–6.  The infringement that forms the basis of this suit is unrelated to the limited actions authorized by the Quote.

In short, the provisions relied on by Intel do not support a conclusion that the ISA's dispute resolution provision applies to this dispute.  The Motion should be denied for that reason alone.

      **B.**      **Even if the ISA Applied to the Dispute, Intel Failed to Address The Factors Considered By This Court in Granting Stays, and All Factors Weigh Against A Stay**

Even if Intel could show that the ISA's dispute resolution provision applies to this dispute, Intel's Motion should still be denied because Intel failed to address the three factors this Court must consider when considering a request for a stay.[3]  Specifically, the Court must examine "(1) whether a stay will simplify the issues for trial, (2) whether discovery is complete and a trial date has been set, and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." *See Personalized User Model*, 2012 WL 5379106, at *1.  "To prevail on a motion to stay, the movant must show that the record affirmatively supports a stay." *Inpria Corp. v. Lam Rsch. Corp.*, No. 22-1359, 2024 WL 2111989, at *3 (D. Del. May 3, 2024).  Intel's failure to make that showing is dispositive. *See id.*  And, in any event, all three factors weigh against a stay.[4]

---

[3] Intel may not introduce arguments for a stay in its Reply.  *See* D. Del. L.R. 7.1.3(c)(2) ("The party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief."); *see also Chervon (HK) Ltd. v. One World Tech., Inc.*, No. 19-1293, 2022 WL 14812531, at *2 (D. Del. Oct. 26, 2022).

[4] Intel points to "Delaware state courts" as having "held that a claim is not ripe for consideration unless parties first exhaust an applicable pre-suit dispute resolution process."  Mot at 4.  But the rules applied by Delaware state courts have no bearing on the standards applied in the Federal Courts in Delaware to Federal causes of action.  *Miller v. Corr. Med. Sys., Inc.*, 802 F. Supp. 1126, 1131 (D. Del. 1992) ("[F]ederal law, not state law, must control in determining the rules governing enforcement in a federal court of rights and remedies created by a federal statute.").

### 1. A Stay Will Not Simplify the Issues for Trial

Anaconda's suit is based on acts by Intel that are not authorized by any license. There can be no dispute that Intel released versions of the AI Kit *after* the Quote expired in June 2023 that incorporate packages from Anaconda's repository. *See* Victorson Decl. Exs. 2–3. It is Anaconda's position that Intel's use of Anaconda software in those later-released versions is not authorized by the Quote. *See* D.I. 17 Ex. B at 2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mot. at 3 (citing same). For its part, Intel appears to believe—erroneously—that its continued practice of using and redistributing Anaconda's proprietary software is proper under the expired Quote. If so, there is no reason to believe that a stay or mediation will lead to a negotiated resolution or otherwise simplify the issues for trial, given the parties diametrically opposed positions on this core legal question. Only proceeding with litigating of the merits of Anaconda's claims can resolve that issue.

This factor weighs strongly against a stay.

### 2. The Early Stage of this Case Does Not Merit a Stay

The long history between the parties preceding the filing of the Complaint likewise militates against a stay. As explained, Anaconda repeatedly attempted to address Intel's improper use of Anaconda's proprietary software. *See* Reeves Decl. ¶3, Ex. 1 (communications dated July 26–August 8, 2024), Ex. 2 (communications dated May 6–10, 2024), Ex. 3 (communications dated April 19–May 2, 2024); D.I. 17-1, Ex. D. Intel has repeatedly stated that it believes it has done, and is doing, nothing wrong. *See* Mot. at 6–7; D.I. 14 ¶¶ 34–37, 42; Reeves Decl. ¶ 3, Ex. 1, Ex. 3. Consequently, this is not a case where the parties are still exploring relevant facts such that a compromise is in the offing. At this point, only addressing the merits of Anaconda's claims will advance the parties' understanding of the facts and resolution of the dispute.

9

This factor weighs against a stay.

### 3. A Stay Would Unduly Prejudice Anaconda

Intel's motion practice prejudices Anaconda and wastes Court and party resources. Intel's motions to stay and strike are premised on the Court making substantive legal determinations. *See* Mot. at 6–7 (arguing that the claims "concern the scope of Intel's right to use" Anaconda's software "in accordance with" the Quote); D.I. 19 at 8 (seeking legal determination that any infringement "commenced after first publication of the work and before the effective date of its registration" under 17 U.S.C. § 412). This reveals the inconsistency of Intel's positions: in effect, Intel requests substantive review of *only* the portions of the case Intel wishes to address while seeking to delay all others. The Court should not allow Intel to engage in such gamesmanship.

Importantly, the delay associated with a stay substantially hinders Anaconda's ability to seek relief for the parties' dispute. "If a stay is granted[,] plaintiff's efforts to promptly and efficiently prosecute [its] case would be hampered. There is no question that a stay would substantially delay plaintiff's efforts to diligently proceed to sustain [its] claim." *Costantino v. City of Atlantic City*, No. 13-6667, 2015 WL 668161, at *4 (D.N.J., Feb. 17, 2015). "This ***substantially*** prejudices plaintiff." *Id.*

Additionally, a stay would permit Intel's infringement to continue unabated while delaying Anaconda's ability to obtain relief to stop that infringement. As discussed above, Intel has (1) new releases of Intel Software that fall outside the scope of the Quote and (2) directions for older releases of Intel Software instructing users to download "new" packages in violation of the terms of the Quote. *See* Victorson Decl. Exs. 2–6. Intel has not agreed to cease either practice. That Intel continues to integrate unlicensed Anaconda software in Intel's products makes Intel a direct competitor to Anaconda. Reeves Decl. ¶ 4. Thus, Intel's own acts directly harm Anaconda and Anaconda's business prospects. *Id.*; *see Inpria Corp.*, 2024 WL 2111989, at *2 (holding that the

"undue prejudice" factor weighed "strongly" against a stay in part because "Plaintiff and Defendant are competitors" and "granting the Motion could later harm Plaintiff in ways that might be difficult to remedy with money damages").

This factor weighs strongly against a stay.

### VII. CONCLUSION

For the foregoing reasons, Anaconda respectfully requests that Intel's Motion to Stay be denied and for any other relief the Court deems just.

| | |
|---|---|
| OF COUNSEL: | /s/ Kelly E. Farnan |
| | Kelly E. Farnan (#4395) |
| Maximilian A. Grant | Richards, Layton & Finger, P.A. |
| Sarang V. Damle | One Rodney Square |
| Holly K. Victorson | 920 North King Street |
| Nicole E. Bruner | Wilmington, DE 19801 |
| LATHAM & WATKINS LLP | (302) 651-7700 |
| 555 Eleventh Street NW, Suite 1000 | farnan@rlf.com |
| Washington, DC 20004 | |
| (202) 637-2200 | *Attorneys for Plaintiff Anaconda, Inc.* |

Dated:  October 17, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2022, true and correct copies of the foregoing document were caused to be served on the following counsel of record as indicated:

**BY ELECTRONIC MAIL**
Philip A. Rovner
Matthew E. Fischer
Nicole K. Pedi
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19801

**BY ELECTRONIC MAIL**
Vanessa Soriano Power
Stoel rives LLP
600 University Street, Suite 3600
Seattle, WA 98101

**BY ELECTRONIC MAIL**
Nathan C. Brunette
Stoel Rives LLP
760 SW Ninth Ave., Suite 3000
Portland, OR 97205

**BY ELECTRONIC MAIL**
Cory M. Carone
Stoel Rives LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID 83702

*/s/ Kelly E. Farnan*
Kelly E. Farnan (#4395)
farnan@rlf.com